UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW MCAFEE on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:24-cv-01168-JPH-MJD ) |
| DRAFTKINGS, INC., | ) ) ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

Matthew McAfee alleges that DraftKings breached a contract between them and violated Indiana consumer-protection laws when it cancelled his sports bet after the bet won. DraftKings has filed a motion to dismiss for failure to state a claim. Dkt. [30]. For the reasons that follow, that motion is **GRANTED in part and DENIED in part**.

I.
**Facts and Background**

Because DraftKings has moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

In October 2023, Mr. McAfee placed a $100 "seven-leg same game parlay" bet—meaning that seven separate milestones would have to happen in the game for the bet to win—on a basketball game between the Los Angeles Lakers and the Denver Nuggets ("the Bet"). Dkt. 1-2 at 2–3. If successful, the Bet would pay $150,000. *Id.* DraftKings accepted the Bet and all seven legs hit.

1

*Id.* The next day, DraftKings cancelled the Bet and did not pay, claiming that the odds for each leg of the Bet "were erroneously low." *Id.*

Mr. McAfee brought this case on behalf of a putative class alleging breach of contract and violations of Indiana's Deceptive Consumer Sales Act ("DCSA"), Ind. Code § 24-5-0.5-1 *et seq.* *Id.* at 3–5. DraftKings removed the case to federal court, dkt. 1, and filed a motion to dismiss, dkt. 30.

## II.
## Rule 12(b)(6) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of

2

truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019). Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

## III.
## Analysis

### A. Breach of Contract

Under Indiana law, "[t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). DraftKings argues that Mr. McAfee has not pleaded a plausible breach of contract claim because DraftKings's House Rules allowed DraftKings to cancel the Bet when it did. Dkt. 31 at 5–7. Mr. McAfee responds that DraftKings's House Rules are not alleged to be part of the contract at issue, so they cannot be used to justify dismissal. Dkt. 46 at 1–4.

3

Since DraftKings's House Rules are not referenced in or attached to the complaint, the general rule is that they cannot be considered on a motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[A] court may consider . . . documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice."). But even if the Court were to find that the House Rules are "central to the complaint" and could be considered in evaluating DraftKings's motion to dismiss, dkt. 51 at 4–5, the Court would need additional evidence to establish that the House Rules applied to the Bet. DraftKings therefore also relies on an affidavit from its attorney stating that he "could and would competently testify" that DraftKings's tendered House Rules "were in effect when Plaintiff made the wager at issue in this matter." Dkt. 31-1 at 1–2 (Franklin Krbechek Decl.). But there's a problem with this—Mr. Krbechek's declaration is not mentioned in or central to Mr. McAfee's complaint, and DraftKings does not offer another basis that would allow the Court to consider it in adjudicating the motion to dismiss. *See Williamson*, 714 F.3d at 436; dkt. 31; dkt. 51.

Therefore, the Court could consider the Declaration only if it treated DraftKings' motion to dismiss as a motion "for summary judgment and provide[d] each party notice and an opportunity to submit" evidence. *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002). But DraftKings has not requested that approach and discovery is ongoing, so Mr. Krbechek's affidavit—and therefore the House Rules—must be left for a later

4

stage.  *See* dkt. 51; dkt. 75; *Tierney v. Vahle*, 304 F.3d 734, 738–39 (7th Cir. 2002) (defendants may not attach and rely on a contract in a 12(b)(6) motion if it "require[s] discovery to authenticate or disambiguate").

Mr. McAfee's complaint therefore stands alone, and it alleges that he placed a Bet with DraftKings, that DraftKings accepted the Bet, that the Bet succeeded, and that DraftKings did not pay.  Dkt. 1-2 at 2–3.  Despite those allegations, DraftKings briefly argues—with no supporting authority—that Mr. McAfee has not "alleged that he suffered any damages," dkt. 31 at 7, and "has not alleged any contractual term that was breached," dkt. 51 at 7 n.4.  But DraftKings's acceptance of Mr. McAfee's bet alleges a contract, and DraftKings's failure to pay the winning Bet alleges breach and damages.  *See* dkt. 1-2 at 2–3.  Mr. McAfee has therefore plausibly stated a breach of contract claim under Indiana law.  *See Bible v. United Student Aid Funds*, 799 F.3d 633, 639, 645–51 (7th Cir. 2015); *McMillan v. Collection Pros. Inc.*, 455 F.3d 754, 765 (7th Cir. 2006) ("[E]ven if Ms. McMillan's claims would lack merit in a summary judgment motion, it does not necessarily mean that she has not stated a claim upon which relief can be granted.").

Indeed, the only cases that DraftKings relies on at this stage cannot support dismissal without turning to the House Rules.  *See Turley v. DraftKings Inc.*, No. 23-cv-10054-ADB, 2024 WL 1466675, at *4 (D. Mass. Mar. 29, 2024) (dismissal under DraftKings's rules because Plaintiffs relied on the rules at issue in their complaint); *Conyers v. Forest River, Inc.*, 688 F. Supp. 3d 809 (N.D. Ind. 2023) (dismissal under RV purchase agreement that Plaintiff

5

referenced in the complaint and did not challenge). Since those arguments must wait, DraftKings's motion to dismiss this claim is denied.[1]

## B. Deceptive Consumer Sales Act Claims

Mr. McAfee claims that DraftKings violated Indiana's DCSA by cancelling and failing to pay the Bet after it won. Dkt. 1-2 at 3–4. He alleges that this was both an "incurable deceptive act," which is a deceptive act done with "intent to defraud or mislead," Ind. Code § 24-5-0.5-2(a)(8), and an "uncured deceptive act," which is a deceptive act that is not fixed after the consumer provides notice, Ind. Code § 24-5-0.5-2(a)(7). *See Butler Motors, Inc. v. Benosky*, 181 N.E.3d 304, 318 (Ind. Ct. App. 2021) ("A deceptive act is actionable [under the DCSA] only if it is 'incurable' or 'uncured.'").

DraftKings argues that these claims must be dismissed because Mr. McAfee has not pleaded detrimental reliance on a deceptive act as the DCSA requires. Dkt. 31 at 10–11 (contending that Mr. McAfee "could not have relied on" later acts "when deciding to place the [Bet]"). In response, Mr. McAfee concedes that he has not pleaded detrimental reliance, but argues that the DCSA should be interpreted not to require detrimental reliance when the alleged deceptive act "occurs *after* the transaction" at issue. Dkt. 46 at 9–11.

The DCSA allows a "person *relying upon* an uncured or incurable deceptive act" to bring an action for damages. Ind. Code § 24-5-0.5-4(a)

---

[1] For the same reason, it does not matter that Mr. McAfee does not specifically argue that he did not accept the House Rules. The pleadings control at this stage and DraftKings cites no authority for its argument that this silence is a concession. *See* dkt. 51 at 4–5. Similarly, DraftKings's request to strike Mr. McAfee's jury demand under DraftKings's Terms of Use is denied without prejudice. *See* dkt. 31 at 13–14.

6

(emphasis added).  The Indiana Supreme Court recently explained that, under this language, "a prerequisite for obtaining damages under this statute is that the claimant *relied* on the deception."  *Hoosier Contractors, LLC v. Gardner*, 212 N.E.3d 1234, 1239–40 (Ind. 2023) (quoting *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 178 (Ind. 2019)).  In short, the DCSA "requires consumers to rely on the deceptive act and suffer injury as a result—known as detrimental reliance."  *Id.*

Mr. McAfee nevertheless contends that detrimental reliance is not required for his DCSA claims because they are based on DraftKings's unfair, post-transaction conduct rather than deceptive misrepresentations.  Dkt. 46 at 10 ("The [alleged] violations are not based on any deception, so there are no allegations of deception or detrimental reliance [in the complaint] as neither are required.").  That argument runs headlong into the DCSA's text allowing a person "relying upon" a deceptive act to bring an action, Ind. Code § 24-5-0.5-4(a), and the recent Indiana Supreme Court decisions holding that detrimental reliance is "required" for DCSA claims, *Hoosier Contractors*, 212 N.E.3d at 1240–41; *Rainbow Realty Grp.*, 131 N.E.3d at 178.

Resisting that authority, Mr. McAfee argues that the Indiana Supreme Court "could not have intended" what it said because the detrimental reliance requirement would read language out of the DCSA.  *See* dkt. 46 at 10; *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1199 (Ind. 2016) ("[W]hen engaging in statutory interpretation, we avoid an interpretation that renders any part of the statute meaningless or superfluous.").  He points to the

7

DCSA's prohibition on deceptive acts that occur "after the transaction," Ind. Code § 24-5-0.5-3(a), contending that a detrimental-reliance requirement writes those words out of the statute since "there could never be detrimental reliance" on post-transaction acts. Dkt. 46 at 10.

However, Mr. McAfee does not cite any case law supporting this understanding of the DCSA. Dkt. 53-1 at 5 (Mr. McAfee admitting that he "is not aware of a reported opinion addressing this issue, so there is no case to cite"). *See id.* What's more, it's Mr. McAfee's proposed remedy that would require removing language from the DCSA—the unqualified "relying upon" language in Indiana Code § 24-5-0.5-4(a). *See ESPN, Inc.*, 62 N.E.3d at 1199. This Court therefore applies the Indiana Supreme Court's holding that detrimental reliance is required for DCSA claims. *See Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 927 (7th Cir. 2024) ("When the state's highest court has squarely addressed [an] issue, a federal court's task is straightforward: apply the law as determined by that court."); *Hoosier Contractors*, 212 N.E.3d at 1240–41. Since Mr. McAfee admits that he has not pleaded detrimental reliance, his DCSA claims must be dismissed.[2]

### C. Class Certification Briefing

Mr. McAfee has moved to certify a class of everyone in Indiana who bet on the same game that he did and had their bets cancelled by DraftKings. Dkt. 62. DraftKings has responded that the motion is premature, so it should be

---

[2] The Court therefore need not address DraftKings's alternative argument that its cancellation of the Bet did not violate the DCSA because it was expressly permitted by Indiana law. *See* dkt. 51 at 9–10.

8

denied without prejudice or substantive briefing should be deferred until the motion to dismiss is decided. Dkt. 72. In reply, Mr. McAfee argues that DraftKings has waived all arguments against certification because it did not substantively oppose certification. Dkt. 74.

DraftKings's decision to file a "response in opposition" that did not address the merits of class certification could doubtlessly support waiver.[3] *See Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014). Federal Rule of Civil Procedure 23, however, requires that class certification be "rigorously analyze[d]," so the Court declines to enforce waiver here. *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 598 (7th Cir. 2021); *see Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021) ("A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met."). DraftKings shall have **through February 24, 2025** to file an amended response to Mr. McAfee's class certification motion. Mr. McAfee may reply **by March 10, 2025**.

### IV.
### Conclusion

Mr. McAfee's motion to file a surreply is **GRANTED** to the extent that the Court has considered his proposed surreply brief. Dkt. [53]. DraftKings's motion to dismiss is **GRANTED** as to Mr. McAfee's DCSA claims and **DENIED** as to his breach of contract claim. Dkt. [30].

---

[3] If DraftKings believed that a response on the merits was premature, it could and should have filed a motion for extension of time or a motion to stay class certification briefing instead of risking waiver by undermining the standard briefing schedule without Court approval. *See* S.D. Ind. L.R. 7-1(c)(3).

**SO ORDERED.**

Date: 2/7/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel