UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW MCAFEE, on behalf of himself and all others similarly situated </br></br>Plaintiff, </br></br> v. </br></br> DRAFTKINGS, INC., </br></br> Defendant. | ) ) ) ) ) ) ) ) No. 1:24-cv-01168-JPH-MJD ) ) ) ) ) |

**ORDER GRANTING PLAINTIFF'S AMENDED MOTION
FOR CLASS CERTIFICATION**

Matthew McAfee and 98 other Indiana residents placed 140 bets with DraftKings on a single NBA game. DraftKings cancelled those bets after they won, contending that they were offered with incorrect odds. Mr. McAfee then filed this case alleging that DraftKings's cancellation breached a contract between him and DraftKings. Mr. McAfee seeks to certify a class of all Indiana residents whose bets on that game won and then were cancelled by DraftKings. Dkt. [108]. For the reasons to follow, that motion is **GRANTED**.

**I.
Facts and Background**

On October 24, 2023, Mr. McAfee and 98 other Indiana residents placed bets with DraftKings on an NBA basketball game between the Los Angeles Lakers and Denver Nuggets (the "Game"). Dkt 108-1 at 1; dkt. 1-2 at 2-3. These bets were all placed during a seven-minute period, from 4:25 pm to 4:32 p.m. on the day of the Game. *See* dkt 108-1 at 3–4. DraftKings accepted the

1

bets, dkt. 85 at 2, and all the bets won, dkt. 108-1 at 3-4. But the next morning DraftKings cancelled the bets, claiming that the "markets . . . were offered for incorrect odds." Dkt. 108-1 at 11. Mr. McAfee alleges that by canceling his bet, DraftKings breached a contract with him. Dkt 108 at 1.

Mr. McAfee brought this action on behalf of a putative class alleging breach of contract and violations of Indiana's Deceptive Consumer Sales Act. Dkt. 1-2 at 3–5. The Court granted DraftKings's motion to dismiss Mr. McAfee's DCSA claims and denied its motion to dismiss his breach of contract claim. Dkt. 81. Mr. McAfee has filed a motion for class certification, proposing a class of himself and "all persons similarly situated in the State of Indiana who placed a winning wager on the October 24, 2023, Los Angeles Lakers v. Denver Nuggets professional basketball game that was subsequently canceled by DraftKings." Dkt. 108 at 2.

## II.
## Class Certification Standard

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1982). "Federal Rule of Civil Procedure 23 governs class actions." *Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021). "Rule 23 gives the district courts broad discretion to determine whether certification of a class-action lawsuit is appropriate," *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010).

2

Rule 23(a) imposes "four—and only four—requirements for class certification: numerosity, commonality, typicality, and adequacy of representation." *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022). In addition to those "prerequisites," the class must fit one of Rule 23(b)'s "particular types of classes, which have different criteria." *Santiago*, 19 F.4th at 1016. "A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Id.* "In conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

## III.
## Analysis

### A. Ascertainability

In addition to satisfying the prerequisites of Federal Rule of Civil Procedure 23(a), "a class must be sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012). Here, Mr. McAfee seeks to certify a class consisting of "all persons similarly situated in the State of Indiana who placed a winning wager on the October 24, 2023, Los Angeles Lakers v. Denver Nuggets professional basketball game that was subsequently canceled by DraftKings." Dkt. 108 at 2. DraftKings argues that because the bets were not written contracts, this proposed class cannot be ascertained without individualized inquiries into each bettor's subjective understanding of whether their bet formed a contract. Dkt.

3

116 at 4–8. Mr. McAfee responds that any individualized inquiry is premature because determination of the terms of the contract is a merits issue. Dkt. 117 at 3.

For a class's members to be ascertainable, the class must "be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). "[C]lasses that are defined by subjective criteria, such as by a person's state of mind" are insufficient because they require the "Sisyphean task" of identifying class members based on each person's state of mind. *Id.*; *Simer v. Rios*, 661 F.2d 655, 669–70 (7th Cir. 1981); *see also Jamie S.*, 668 F.3d at 495. So, in *Simer*, a class was not ascertainable when its membership turned on whether the potentially impacted individuals knew of and were discouraged by a government regulation. 661 F.2d at 669.

The class definition here, by contrast, defines the class as bettors in Indiana who won certain wagers they placed with DraftKings. Dkt. 108-1 at 3-4. Each class member placed the wager in Indiana, on the same NBA basketball game, on the same day—in fact, during the same seven-minute period. *Id.* at 4. Those objective facts are the only membership criteria. *See id.* at 2. Indeed, the class has already been identified as including Mr. McAfee and 98 similarly situated members. *Id.* at 4. So, unlike in *Simer*, identifying members of the proposed class does not turn on each member's state of mind. *Simer*, 661 F.2d at 668–69. This case is instead like *Mullins*, where the Seventh Circuit addressed a class of consumers who purchased a medical supplement within a particular period, holding that the definition was not

4

vague because it "identified a particular group of individuals . . . harmed in a particular way . . . during a specific period in particular areas." 795 F.3d at 658–61.

DraftKings's argument that the class is not ascertainable goes to the merits of whether the bets placed by putative class members formed a contract, not whether the class is ascertainable. *See* dkt. 116 at 9–10; *Mullins*, 795 F.3d at 657–58, 674 (explaining that ascertainability focuses on the adequacy of the class definition and "express[ing] no view on the merits"). While the Rule 23 analysis will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), "certification is largely independent of the merits . . . and a certified class can go down in flames on the merits," *Arandell Corp. v. Xcel Energy, Inc.*, 149 F.4th 883, 893 (7th Cir. 2025); *see also Schleicher v. Wendt*, 618 F.3d 679, 687 (7th Cir. 2010) ("The chance, even the certainty, that a class will lose on the merits does not prevent its certification.").

The class here is therefore ascertainable. *See Mullins*, 795 F.3d at 657–61.

### B. Rule 23(a) Requirements

#### 1. Numerosity

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). DraftKings does not contest numerosity, and Mr. McAfee has

5

designated evidence indicating that the class consists of himself and 98 other Indiana residents. *See* dkt 108-1 at 4; dkt 110.

A class of 99 is sufficient to meet the numerosity requirement. *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 860 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement.").

### 2. Commonality

To satisfy the commonality requirement, there must "be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). Mr. McAfee argues that there are two common questions: (1) "What are the terms of the applicable contract?" and (2) "Did DraftKings breach the contract?" Dkt. 109 at 5. DraftKings responds that Mr. McAfee "cannot establish how, under his theory, the Court could determine the terms of the alleged agreement on a classwide basis." Dkt 116 at 10.

"The proper focus of commonality is whether determination of the question will yield common answers that could resolve the litigation." *Red Barn Motors, Inc. v. NextGear Cap., Inc.*, 915 F.3d 1098, 1102 (7th Cir. 2019). It therefore is not necessary to determine the exact terms of a contract at the class certification stage, so long as the class raises a common contention capable of resolution in one stroke. *See id.*

That is the case here because of the class's common contention that a contract was formed with each class member in the same way—by placing a

6

bet with DraftKings. *See* dkt 109 at 5. Regardless of whether a contract was formed and, if so, whether the House Rules set the terms, that presents a question common to members of the proposed class. *See Red Barn Motors*, 915 F.3d at 1102 ("With such a form contract, almost universally signed without negotiation or modification, there is no reason to think that the interpretation of the provision will vary from one signatory to another, and therefore the issue is one that is capable of a common answer."). And even "a single common question will do." *Wal-Mart,* 564 U.S. at 359.

The commonality requirement is therefore satisfied. *See Red Barn Motors*, 915 F.3d at 1102.

### 3. Typicality & Adequacy of Representation

To satisfy the typicality and adequacy of representation requirements, "the claims or defenses of the representative party [must] be typical of the claims or defenses of the class," *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009), and the representative parties must "fairly and adequately protect the interests of the class," *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 625 (1997). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory.'" *Oshana v. Coca–Cola Co.*, 472 F.3d at 514 (7th Cir. 2006). And representation is adequate when the named plaintiff's interests align with the proposed class members' interests and when proposed class counsel will competently represent the class. *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

7

DraftKings argues that typicality and adequacy of representation are lacking here because DraftKings may have defenses peculiar to Mr. McAfee. Dkt. 116 at 10-12 (citing *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011)). Mr. McAfee contends that his interests are consistent with those of the proposed class, and therefore his claims are typical, and he and his counsel are adequate. Dkt. 109 at 5-7.

While "an arguable defense peculiar to the named plaintiff . . . may destroy the required typicality," *CE Design*, 637 F.3d at 726, DraftKings has not identified any defense peculiar to Mr. McAfee. Instead, DraftKings claims it has a defense that Indiana law "expressly permits DraftKings to void a wager if, as here, the entitlement is based on criteria clearly set forth in its House rules." Dkt. 116 at 12. But DraftKings does not explain why that defense would not be common to the entire class, since all class members placed their bets with DraftKings. *See id.*[1] Moreover, the claim of every class member "arises from the same event or practice or course of conduct" and "[is] based on the same legal theory," *Oshana*, 472 F.3d at 514. That is enough to satisfy the typicality requirement. *See id.*; *see also Muro*, 580 F.3d at 492 ("[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.").

---

[1] If DraftKings is correct that its House Rules govern the parties' contractual relationship, it still offers no evidence that any class members placed their bets without agreeing to those House Rules. *See* dkt. 116 at 11. Instead, DraftKings indicates that it would not be possible for a DraftKings user to place a bet without agreeing to the Terms of Use. *See id.* at 6, n.1.

8

For the same reasons, DraftKings has not shown that Mr. McAfee is not an adequate class representative based on any defense peculiar to Mr. McAfee. *See* dkt 116 at 10-12. Mr. McAfee's interests appear entirely consistent with those of the proposed class—there is nothing "idiosyncratic or possibly unique" about his claims. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014).

Finally, DraftKings does not dispute that Mr. McAfee's counsel will adequately represent the class. Attorney Robert Duff has twenty-nine years of litigation experience and has experience litigating similar cases. Dkt 108-1 at 2. There is no indication that Mr. Duff's interests conflict with those of the proposed class.

The typicality and adequacy-of-representation requirements are therefore satisfied.

### C. Predominance under Rule 23(b)(3)

"[A] class action may only be maintained under Rule 23(b)(3) if 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Santiago*, 19 F.4th at 1016 (quoting Fed. R. Civ. P. 23(b)(3)). In assessing those requirements, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

9

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

DraftKings argues that individual questions predominate because individualized inquiries into the existence and terms of the alleged contracts for each class member will be required. Dkt. 116 at 8. Mr. McAfee contends that common questions predominate because he "and the proposed class members have all been treated exactly [the] same and the predominant issue is whether [DraftKings] breached its contract with [him] and the prospective class members." Dkt 109 at 7.

The "predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 814. "Or, to put it another way, common questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Id.* "Individual questions need not be absent"—Rule 23 "requires only that those questions not predominate over the common questions affecting the class as a whole." *Id.*

"Analysis of predominance under Rule 23(b)(3) begins, of course, with the elements of the underlying cause of action." *Id.* Under Indiana contract law, which governs this case, *see Webber v. Butner*, 923 F.3d 479, 480-81 (7th Cir.

10

2019), "a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). What matters for predominance is whether the contract claim can be proven at trial "through evidence common to the class rather than individual to its members." *Messner*, 669 F.3d at 818.

Substantial individual inquiries are unlikely here because, under Indiana law, intent to contract is objective. *Akin v. Simons*, 180 N.E.3d 366, 377 (Ind. Ct. App. 2021). So "the intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it." *Id.* (citing *Gerdon Auto Sales, Inc. v. John Jones Chrysler Dodge Jeep Ram*, 98 N.E.3d 73, 80 (Ind. Ct. App. 2018)). And "the intention of the parties to a contract is a factual matter that must be determined from all the circumstances," *Jetz Service Co., Inc. v. Ventures*, 165 N.E.3d 990, 994 (Ind. Ct. App. 2021), which here include the objective act of placing a bet on DraftKings's platform.

Indeed, neither party disputes that Mr. McAfee and 98 other Indiana residents placed 140 wagers on the October 24, 2023, Los Angeles Lakers and Denver Nuggets game through the DraftKings app and that those winning wagers were never paid. That provides a "common nucleus of operative facts and issues" underlying all class claims and that can be proven at trial using the same evidence. *Messner*, 669 F.3d at 815. That is enough to show predominance for Rule 23(b)(3). *See id.* at 818.

11

Rule 23(b)(3) also requires plaintiffs to show that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." *Santiago,* 19 F.4th at 1016 (quoting Fed. R. Civ. P. 23(b)(3)). DraftKings does not dispute this requirement. *See* Dkt 116 at 4–12; *see Chi. Teachers Union, Local No. 1 v. Bd. of Ed. of Chi.*, 797 F.3d 426, 436 (7th Cir. 2015) (finding it "certainly [ ] more efficient" to answer a single common question "just one time rather than over and over again in multiple separate lawsuits"). The superiority requirement is thus also satisfied.[2]

### D. Appointment of Class Representatives & Class Counsel

After certifying a Rule 23 class, the court is required to appoint class counsel to represent the class members. *See* Fed. R. Civ. P. 23(g)(1). In doing so, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed R. Civ. P. 23(g)(1)(A).

---

[2] The Court therefore does not address Mr. McAfee's alternative argument that DraftKings's opposition to class certification could be resolved with a concession that the House Rules govern each class member's breach-of-contract claim. Dkt 117 at 6-7.

For the reasons explained above and based on the Court's finding of the adequacy of the class representative and class counsel, the Court appoints Matthew McAfee as class representative and Robert Duff as class counsel.

## IV.
## Conclusion

Mr. McAfee's amended motion for class certification is **GRANTED** and the proposed class is certified.  Dkt. [108].  The Court **ORDERS** the parties to meet and confer, and **by January 16, 2026** submit a joint report in this matter setting forth a proposed plan for providing notice to the class.  *See* Fed. R. Civ. P. 23(c)(2)(B).

**SO ORDERED.**

Date: 12/9/2025

*/s/ James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.