UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MATTHEW MCAFEE on behalf of himself and all others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:24-cv-01168-JPH-MJD |
| DRAFTKINGS, INC., | ) | |
| Defendant. | ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Matthew McAfee placed a bet with DraftKings on a basketball game between the Los Angeles Lakers and the Denver Nuggets. DraftKings canceled the bet—which would have been successful—the day after the game, and Mr. McAfee sued for breach of contract. After the Court certified a class of Indiana bettors, Mr. McAfee and DraftKings filed cross-motions for summary judgment on the breach of contract claim. Dkt. 132; dkt. 137. For the reasons below, Mr. McAfee's motion for summary judgment is **DENIED**, dkt. [132], and DraftKings' motion is **GRANTED**, dkt. [137].

## I.
## Facts and Background

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). For each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.* That's not necessary here, however, because even when the

designated evidence is interpreted in Mr. McAfee's favor, DraftKings is entitled to summary judgment. *See Saslow v. Bankers Std. Ins.*, 176 F.4th 988, 992 (7th Cir. 2026).

On October 24, 2023, Mr. McAfee placed a $100 "seven-leg same game parlay" bet—meaning that seven separate milestones must happen in the game for the bet to win—with DraftKings on a basketball game between the Los Angeles Lakers and the Denver Nuggets ("the Bet").[1] Dkt. 138-1 at 154. If successful, the Bet would pay $150,000. Dkt. 132-2 at 217–18 (McAfee Dep.). Each of the Bet's seven legs required a specific player to score more than a certain number of points. *See* dkt 138-1 at 154. The individual players' point totals were significantly lower than what was reflected by both the general market and the players' usual averages. Dkt. 139-2 at 2; *see* dkt. 141 at 18.

DraftKings informed Mr. McAfee during the game that it was "investigating a potential issue related to the odds offered," so "settlement [of the Bet] will be delayed." Dkt. 138-1 at 158. The next day, DraftKings "voided all parlay legs placed on bets on the Los Angeles Lakers versus Denver Nuggets game," including Mr. McAfee's Bet. Dkt. 132-1 at 7. The Bet "would have won if not voided by DraftKings." *Id.*

Before placing the Bet, Mr. McAfee agreed to DraftKings' Terms and Conditions to create a DraftKings account. *See* dkt. 132-2 at 194–95 (McAfee Dep.). Those Terms and Conditions incorporate DraftKings' House Rules,

---

[1] DraftKings' unopposed motion to take judicial notice of background facts about the NBA is **GRANTED**. Dkt. [143].

which provide examples of how bets are settled, including "settled as void," "settled as lost," and "settled as winners." *E.g.*, dkt. 138-2 at 61–62. Under House General Rule 5.4, "DraftKings reserves the right, at its own discretion, to declare a bet void, totally or partly, irrespective if the bet is settled, if it is obvious that . . . [b]ets have been offered, placed and/or accepted due to an Error." *Id.* at 39.

Mr. McAfee brought this case in Indiana state court on behalf of a putative class, alleging breach of contract and violations of Indiana's Deceptive Consumer Sales Act. Dkt. 1-2 at 3–5. DraftKings removed the case to this Court, dkt. 1, and filed a motion to dismiss, dkt. 30. The Court granted the motion to dismiss as to Mr. McAfee's Deceptive Consumer Sales Act claim but denied the motion as to his breach of contract claim. Dkt. 81. Mr. McAfee then filed an amended motion for class certification, dkt. 108, which this Court granted, dkt. 149.

Mr. McAfee and DraftKings filed cross-motions for summary judgment on the remaining breach of contract claim. Dkt. 132; dkt. 137.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this

burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on cross motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party." *Williams*, 832 F.3d at 648. The parties agree that Indiana law governs Mr. McAfee's breach of contract claim. *See* dkt. 141 at 23; dkt. 133 at 2. Therefore, absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on issues of law. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

## III.
## Analysis

"[T]he essential elements of a breach of contract action are: 1) the existence of a contract; 2) the defendant's breach thereof; and 3) damages." *Hopper v. Colonial Motel Props., Inc.*, 762 N.E.2d 181, 187 (Ind. Ct. App. 2002). Here, Mr. McAfee and DraftKings agree that a valid contract governed the Bet, and dispute only whether DraftKings breached the contract. Dkt. 141 at 23; dkt. 156 at 1; dkt. 158 at 6.

Mr. McAfee's breach argument is not based on the contractual provisions—he concedes that DraftKings' House Rules govern the contract, that those rules allow DraftKings to cancel a bet for obvious error at any time, and that the player point totals in the Bet were obvious errors. Dkt. 156 at 1 (Mr.

McAfee's concession that he "does not reasonably contest that the House Rules were part of the contract and that the wager involved obvious error"); *see* dkt. 138-2 at 39. Instead, Mr. McAfee's theory is that DraftKings breached the contract by cancelling the wager the next day, because Indiana's sports-wagering statute requires DraftKings to cancel a wager "by the end of the contest for obvious error." Dkt. 133 at 2, 4 (Mr. McAfee's brief "freely admit[ting] that his motion for summary judgment, and indeed his entire breach of contract case, rises and falls on this interpretation of the statute.").[2]

The relevant statute generally prevents vendors from cancelling accepted wagers except for "obvious error," in the vendor's discretion:

> A certificate holder or vendor may not cancel a wager that has been accepted, except in the event of obvious error, at the certificate holder's or vendor's discretion. A certificate holder must pay winning patrons following the end of the sporting event.

Ind. Code § 4-38-5-6.

DraftKings argues that it's entitled to summary judgment on Mr. McAfee's breach of contract claim because this statute doesn't prohibit it from cancelling the Bet the day after the contest. Dkt. 141 at 9–10, 30–31. Mr. McAfee responds that the statute required DraftKings to cancel the Bet before

---

[2] The Court assumes without deciding that Indiana Code § 4-38-5-6's provisions "impliedly form [a] part of the agreement." *Schwartz v. Heeter*, 994 N.E.2d 1102, 1106 (Ind. 2013). DraftKings argues that this breach theory is not included in the complaint. Dkt. 141 at 28 (relying on *Anderson v. Donahoe* 699 F.3d 989, 997 (7th Cir. 2012)). But *Anderson* only prohibits new *claims*, 699 F.3d at 998; here, Mr. McAfee permissibly refines his breach of contract claim's theory "at summary judgment." *CMFG Life Ins. Co. v. RBS Secs., Inc.*, 799 F.3d 729, 743 (7th Cir. 2015); *see Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017) ("There is no burden on the plaintiff to justify altering its original theory.").

the game ended because "the only reasonable interpretation" of the statute, when read as a whole, "is that if the wager is not canceled [for obvious error] by the end of the contest it becomes a winning wager and must be paid." Dkt. 133 at 2.

When courts "engag[e] in statutory interpretation" under Indiana law, they "give [the statute's] words their plain meaning and consider the structure of the statute as a whole." *ESPN, Inc. v. Univ. of Notre Dame Police Dept.*, 62 N.E.3d 1192, 1195 (Ind. 2016). "Courts may not engraft new words onto a statute or add restrictions where none exist." *Kitchell v. Franklin*, 997 N.E.2d 1020, 1026 (Ind. 2013).

Here, Indiana Code § 4-38-5-6 unambiguously prohibits vendors like DraftKings from cancelling accepted wagers except in cases of obvious error. That "obvious error" exception, however, has no express time restriction. *See ESPN, Inc.*, 62 N.E.3d at 1195 ("As we interpret the statute, we are mindful of both what it does say and what it does not say."). Moreover, if there is obvious error, the statute expressly commits cancellation to the "vendor's discretion." Ind. Code § 4-38-5-6. Mr. McAfee's proposed time restriction that cancellation must occur "before the end of the contest" therefore is not in the statutory text and does not fit its context or structure, which instead grants discretion to DraftKings. *See ESPN, Inc.*, 62 N.E.3d at 1195. Imposing such a restriction would impermissibly "read a silent requirement" into a provision that "contemplates only" that vendors have discretion to cancel bets in cases of

obvious error. *League of Women Voters of Ind., Inc. v. Sullivan*, 5 F.4th 714, 726 (7th Cir. 2021) (applying Indiana statutory interpretation law).

Nor does Indiana's liberal construction of consumer protection statutes allow additional requirements to be read into vendors' discretion to cancel for obvious error. *See Consumer Atty. Servs. v. State*, 71 N.E.3d 362, 365–66 (Ind. 2017). Assuming that the obvious-error exception must receive a "narrow construction," *id.*, the statutory text defines the limited *reason* that a vendor may cancel an accepted bet—obvious error—not *when* that cancellation must occur. Ind. Code § 4-38-5-6. So narrowly construing the provision would not help Mr. McAfee here. *Robinson v. Monroe Cnty.*, 663 N.E.2d 196, 197 (Ind. Ct. App. 1996) (Indiana law does not allow a statute to be "rewrit[ten] in order to render it consistent with . . . public policy.").

The next part of the statute, which requires that vendors "pay winning patrons following the end of the sporting event," does not support a different reading or require cancellation before a contest ends. Ind. Code § 4-38-5-6. The requirement that "winning patrons" receive payment after a game concludes does not mandate an immediate determination whether a bet is "winning." *See Kitchell*, 997 N.E.2d at 1026 ("Courts may not . . . add restrictions where none exist."). Here, for example, DraftKings told Mr. McAfee during the game that "settlement [of the Bet] will be delayed," and quickly investigated whether the Bet involved "obvious error," concluding the next day that it did and therefore would be cancelled. Dkt. 138-1 at 158; dkt. 132-1 at 7. Holding that the statute instead requires an immediate determination about

"obvious error" and "winning" patrons "would require reading words into the statute on behalf of the General Assembly, which we shall not do." *City of Lawrence Utils. Serv. Bd. v. Curry*, 68 N.E.3d 581, 587 (Ind. 2017).

Mr. McAfee nevertheless argues that the statute's second sentence is "meaningless" if vendors can cancel wagers after the contest ends. Dkt. 156 at 2. But the statute still protects consumers by requiring payment for "winning patrons," even if that payment does not have to be made immediately when a contest ends. Mr. McAfee acknowledges as much in his reply, when he argues that DraftKings violated this statutory provision even if it allowed cancellation after the contest ended. *Id.* at 13. Regardless, this argument cannot help Mr. McAfee because he never became a "winning patron" protected by this provision. The undisputed designated evidence shows that DraftKings "delayed" settlement of the Bet during the game—meaning that Mr. McAfee was not yet a "winning" or "losing" patron—before cancelling it the next day. *See* dkt. 138-1 at 158. DraftKings's House Rules, which Mr. McAfee does not contest, allowed this delay; they do not require a bet to be settled immediately when a game ends and contemplate that a bet can be "settled as void" rather than "settled as winning." *See* dkt. 138-2 at 57–58. The statute's protection for "winning patrons" therefore does not apply to Mr. McAfee here. Ind. Code § 4-38-5-6.

Last, Mr. McAfee argues that the statute's use of the term "cancel" shows that it imposes a temporal limit. Dkt. 133 at 5. At the outset, this argument contradicts Indiana law's requirement to avoid "the selective reading of

individual words" in statutory interpretation. *Suggs v. State*, 51 N.E.3d 1190, 1194 (Ind. 2016). Regardless, in context, "cancel" describes a vendor's action that is prohibited for "a wager that has been accepted, except in the event of obvious error," at the vendor's discretion. Ind. Code § 4-38-5-6. As explained above, nothing about that context indicates that cancellation is required during the contest. Nor does the plain meaning of "cancel" inherently contain a time frame unenumerated in the statute. *See Cancel*, *Black's Law Dictionary*, (11th ed. 2019) (stating that "cancel" means "to terminate a promise, obligation, or right"); *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co.*, 559 U.S. 175, 183 (2010) (stating that the ordinary meaning of "cancel" is "to annul or destroy" and "to make void; revoke; annul").[3] Indiana Code § 4-38-5-6's plain text therefore does not require bets to be cancelled for obvious error before a contest ends.

In sum, DraftKings did not breach its contract with Mr. McAfee by cancelling the Bet the day after the game. So DraftKings is entitled to summary judgment, and Mr. McAfee's motion for summary judgment is denied.[4] Dkt. 137; dkt. 132.

---

[3] Mr. McAfee also highlights that "the legislature did not use the term 'void,' even though it knew how to do so." Dkt. 133 at 5. But even if that's true, he offers no reason to believe that the legislature chose "cancel" to impose a strict time limit that it could have included in the text. Nor does he not explain why "void" would have a different meaning in the context of this provision, describing a vendor's discretionary action. The separate statutory provision that Mr. McAfee cites does not help him because it uses "void" as an adjective describing a gambling certificate when the certificate holder fails to meet statutory requirements, Ind. Code § 4-38-5-10, not a vendor's discretionary action of cancelling or voiding an accepted wager.

[4] DraftKings also relies on the Indiana Gaming Commission's regulations and statement that "[p]ursuant to Indiana Statute, it is the Sportsbook's sole discretion to cancel wagers due to obvious error." Dkt. 138-1 at 164 (Dismissal of Mr. McAfee's IGC Complaint); *see* 68 Ind. Admin. Code §§ 27-5-3, 27-7-12. The Court does not address this argument because DraftKings is entitled to summary judgment under the

## IV.
## Conclusion

DraftKings' motion for summary judgment is **GRANTED**, dkt. [137], and Mr. McAfee's motion for summary judgment is **DENIED**, dkt. [132]. DraftKings' unopposed motion to take judicial notice is **GRANTED**. Dkt. [143].

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 9/22/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

statutory text, regardless of any regulatory action. *See League of Women Voters of Ind., Inc.*, 5 F.4th at 725 ("If there is no ambiguity—and we find none—then . . . we must confine ourselves to the statutory language and context.").